## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **Plaintiff,** | |
| **v.** | **Case No. 21-20060-JAR** |
| **KAABA MAJEED,**<br>**YUNUS RASSOUL,**<br>  **a.k.a. YUNUS RASSOULL,**<br>**JAMES STATON,**<br>  **a.k.a. ADAM WINTHROP,**<br>**RANDOLPH RODNEY HADLEY,**<br>**DANIEL AUBREY JENKINS,**<br>**DANA PEACH,**<br>**ETENIA KINARD,**<br>  **a.k.a. ETENIA KINNARD, and**<br>**JACELYN GREENWELL,** | |
| **Defendants.** | |

## GOVERNMENT'S RESPONSE TO DEFENDANT GREENWELL'S MOTION TO DISMISS (DOC. 151), DEFENDANT AUBREY JENKINS' MOTION TO DISMISS (DOC. 161), AND DEFENDANT STATON'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (DOC. 162)

On March 15, 2023, defendant Jacelyn Greenwell filed the Motion to Dismiss (the "Greenwell Motion") (Doc. 151)[1], defendant Daniel Aubrey Jenkins ("Aubrey Jenkins") filed the Motion to Dismiss and for a Bill of Particulars (the "Aubrey Jenkins Motion") (Doc. 161)[2], and defendant James Staton filed the Motion to Dismiss for Failure to State a Claim (the "Staton

---

[1] The Greenwell Motion was joined by defendants Majeed (Doc. 170), Staton (Doc. 164), Hadley (Doc. 171), Aubrey Jenkins (Doc. 169), and Kinard (Doc. 154).

[2] The Aubrey Jenkins Motion was joined by defendants Majeed (Doc. 170), Staton (Doc. 164), and Hadley (Doc. 171).

Motion") (Doc. 162).[3]  The government requests that the Court deny all three Motions based on the following points and authorities and any others that may be cited at a hearing on the Motions.

## I.     RELEVANT PROCEDURAL BACKGROUND

On October 20, 2021, a Grand Jury returned an eight-count Indictment charging eight defendants, including defendants Greenwell, Aubrey Jenkins, and Staton, with Conspiracy to Commit Forced Labor, in violation of 18 U.S.C. § 371, and Forced Labor, in violation of 18 U.S.C. § 1589.  (Doc. 1).  All eight defendants are named in the Indictment as members of the conspiracy; different combinations of defendants are named in each of the seven forced labor counts.  On March 2, 2022, the Court designated this case as complex.  (Doc. 87).  On March 15, 2023, defendants filed the instant Motions, which were later joined by various other defendants.  (Docs. 151, 161, and 162).  The Court has scheduled a jury trial to begin on December 4, 2023.

In her Motion, defendant Greenwell claims, by way of legal articles attached to the Motion, that § 1589 is unconstitutionally vague and overbroad as it implicates freedom of association protected by the First Amendment.  (Doc. 151, p. 5).

Defendant Staton's claims are similar to those of defendant Greenwell:  defendant Staton argues that § 1589 is overbroad as implicating freedom of speech and freedom of association protected by the First Amendment.  (Doc. 162, pp. 1-5).  Defendant Staton also claims that the detailed allegations set forth in the 17-page Indictment are insufficient for him to mount a defense and, as a result, the Indictment should be dismissed.  The government addresses this argument below and more fully addresses this argument as part of its response to defendant Majeed's request for a bill of particulars.

---

[3] The Staton Motion was joined by defendants Majeed (Doc. 170), Hadley (Doc. 171), Aubrey Jenkins (Doc. 169), Greenwell (Doc. 173), and Kinard (Doc. 172).

Defendant Aubrey Jenkins makes three arguments in his Motion:  (1) that this case involves only child abuse and the government's use of § 1589 is an "impermissible federalization of a state crime"; (2) that Count One of the Indictment falls outside the statute of limitations and Counts Five and Seven present "significant risk" that a jury would convict defendant Aubrey Jenkins "based solely on conduct falling outside the limitations period"; and (3) that the government should provide defendant Aubrey Jenkins with a bill of particulars.  The government will address only the first argument here; the government will address the statute of limitations issue in response to other defendants' motions to dismiss on statute of limitations grounds and will address the bill of particulars issue as part of its response to defendant Majeed's request for a bill of particulars.

## II.    RELEVANT BACKGROUND REGARDING THE FORCED LABOR STATUTE AS PART OF THE VICTIMS OF TRAFFICKING AND VIOLENCE PROTECTION ACT

The Thirteenth Amendment provides that "neither slavery nor involuntary servitude . . . shall exist within the United States."  U.S. Const. Amend. XIII, § 1.  Section 2 of the Amendment grants Congress broad authority to pass laws that are "necessary and proper" to abolish the "badges and incidents" of slavery.  *Civil Rights Cases*, 109 U.S. 3, 20-21 (1883); *see also United States v. Nelson*, 277 F.3d 164, 184-85 (2d Cir. 2002) (discussing Section 2 of the Thirteenth Amendment).  Congress's authority to legislate pursuant to Section 2 includes the power to "determine what are the badges and incidents of slavery, and the authority to translate that determination into effective legislation."  *Jones v. Alfred H. Mayer*, 392 U.S. 409, 440 (1968).  Congress's determination that a law is necessary and proper under Section 2 must be given effect so long as its determination is "rational[]."  *See id.* at 440-41 (finding that Congress had not made an "*irrational*" determination in legislating under Section 2 when it enacted 42 U.S.C. § 1982 to abolish both private and public discrimination in the sale of property) (emphasis added).  Congress's broad authority to enact

legislation under the Thirteenth Amendment includes the authority to regulate conduct "beyond the actual imposition of slavery or involuntary servitude," *Griffin v. Breckenridge*, 403 U.S. 88, 105 (1971), and to reach a range of conduct that runs afoul of the Thirteenth Amendment's purpose of ensuring universal civil freedom. *See Jones*, 392 U.S. at 438 ("It has never been doubted . . . that the power vested in Congress to enforce the [Thirteenth Amendment] by appropriate legislation, includes the power to enact laws direct and primary, operating upon the acts of individuals, whether sanctioned by state legislation or not.") (internal quotation marks and citation omitted).

In 2000, pursuant to its authority under the Thirteenth Amendment, Congress enacted the forced labor statute as part of the Victims of Trafficking and Violence Protection Act ("TVPA"), to criminalize "[w]hoever knowingly provides or obtains the labor or service of a person" through one or more of several specified prohibited means, including threats of physical restraint or serious harm to that person or another, abuse or threatened abuse of law or legal process, or "any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint."[4] 18 U.S.C. § 1589 (2000); TVPA, Pub. L. No. 106-386, § 112, 114 Stat. 1464. The term "serious harm" was not defined in this pre-2008 version of the statute but was interpreted based on its ordinary meaning.

As the statute was amended in 2008, the prohibited means were amended to include, in relevant part, "serious harm or threats of serious harm to that person or another person." 18 U.S.C. § 1589(a)(2). *See* William Wilberforce Trafficking Victims Protections Reauthorization Act, Pub.

---

[4] For the purposes of this brief, the government will cite the pre-2008 version of as "18 U.S.C. § 1589 (2000)."

L. No. 110-457, § 222(b)(3), 122 Stat. 5044.  The statute, as amended in 2008, defines "serious harm" as:

> Any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

18 U.S.C. § 1589(c)(2).  The inclusion of a definition for "serious harm" was a mere clarification of the statute rather than a change or expansion.  This definition arose primarily from jury instructions provided in a forced labor case in the District of New Hampshire, in which, in 2004, the First Circuit found no error.  *See United States v. Bradley*, 390 F.3d 145, 150 (1st Cir. 2004), vacated on *Booker* grounds, 543 U.S. 220 (2005).

Congress enacted § 1589 in response to the Supreme Court decision of *United States v. Kozminski*, 487 U.S. 931, 942 (1988), which interpreted 18 U.S.C. § 1584's prohibition against "involuntary servitude" to encompass only servitude by "physical or legal coercion."  *See* 22 U.S.C. § 7101(b)(13) (congressional findings supporting the TVPA's passage); H.R. Conf. Rep. No. 939, 106th Cong., 2d Sess. 100-101 (2000).  Specifically, absent an explicit directive from Congress, the Court in *Kozminski* declined to construe "involuntary servitude" to include "the compulsion of services by any means that, from the victim's point of view, either leaves the victim with no tolerable alternative but to serve the defendant or deprives the victim or the power of choice."  487 U.S. 948-49; *see also* 22 U.S.C. § 7101(b)(13).

Accordingly, in enacting the TVPA, Congress explicitly repudiated *Kozminski*'s narrow holding, citing *Kozminski* in expressing its intent to "reach cases in which persons are held in a

condition of servitude through nonviolent coercion." 22 U.S.C. § 7101(b)(13). Congress specifically designed § 1589 "to address the increasingly subtle methods" traffickers use to "place their victims in modern-day slavery" in order to "combat severe forms of worker exploitation that do not rise to the level of involuntary servitude as defined in *Kozminski*." H.R. Conf. Rep. No. 939, at 101. Congress intended the term "serious harm" to refer to "a broad array of harms . . . both physical and nonphysical," that are assessed based on a victim's individual background and circumstances. *Id.* By adding the definition of "serious harm" in 2008, Congress clarified that these harms are not assessed subjectively—a concern in *Kozminski*—but rather from the perspective of a "reasonable person of the same background and in the same circumstances." 18 U.S.C. § 1589(c).

### III.   ARGUMENT

#### A. Any As-Applied Challenge Is Premature

In support of their arguments, defendants Greenwell, Staton, and Aubrey Jenkins each sets forth facts or draws favorable inferences that are not part of the Indictment. (Doc. 151, pp. 1-2, Attach. 1-2; Doc. 161, pp. 8-9; Doc. 162, pp. 1-2). Those extraneous facts and favorable inferences have not been offered into evidence in this case and are not part of the record before the Court; the Court should not rely upon them in ruling on these Motions. Because defendants' as-applied challenges—relating to the constitutionality of application of § 1589 under the First and Tenth Amendments—require a more developed factual record than currently exists, these challenges are premature.

Federal Rule of Criminal Procedure 12(b)(1) authorizes a district court to resolve before trial only those motions "that the court can determine without a trial on the merits." Fed. R. Crm. P. 12(b)(1). The Supreme Court has instructed that Rule 12 allows for pretrial resolution of a

6

motion to dismiss the indictment only when "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *United States v. Covington*, 395 U.S. 57, 60 (1969). "Where, however, the questions of fact relating to the motion to dismiss are intertwined with considerations of issues going to the merits of the case, the questions must be deferred until presented at trial." *United States v. Knox*, 396 U.S. 77, 83 (1969). The Tenth Circuit has explained that "[c]hallenging an indictment is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence." *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006); *see also United States v. Pope*, 613 F.3d 1255, 1260-61 (10th Cir. 2010) (dismissing a motion to dismiss the indictment that claimed that18 U.S.C. 922(g)(9), as applied to defendant violated the Second Amendment, and explaining that "Rule 12 is not a parallel to civil summary judgment procedures requiring both sides to lay their evidentiary cards on the table before trial"). Instead, "[a]n indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true." *Todd*, 446 F.3d at 1067. Therefore, district courts are to "avoid considering evidence outside the indictment when testing the indictment's legal sufficiency." *Id*.

An as-applied challenge to the constitutionality of a criminal statute "requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right." *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 174-75 (2d Cir. 2006); *see also United States v. Goodale*, 831 F. Supp. 2d 804, 817 (D. Vt. 2011) (stating that "a defendant may not make an as-applied challenge without a record to establish the specific facts in the case."). Indeed, in *United States v. Pope*, the Tenth Circuit affirmed the district court's pretrial denial of a motion to dismiss based on a claim that 18 U.S.C. § 922(g)(9) as applied to defendant violated the Second

Amendment, explaining that the "facts surrounding the commission of [defendant's] alleged offense . . . are hardly irrelevant to deciding his defense:  the who, what, where, when, why, and how of his firearm possession *will* determine the validity of his as-applied challenge."  *Pope*, 613 F.3d at 1261.  The *Pope* court concluded that, insofar as a pretrial as-applied challenge requesting dismissal of an indictment requires an analysis of facts outside the indictment, it should be deferred until trial.  *See Pope*, 613 F.3d at 1257 ("If contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial.").

The only facts properly before this Court are those contained in the Indictment, which are sufficient to establish violations of 18 U.S.C. §§ 371 and 1589, as discussed below (*see* III.D) and in the government's response to defendant Majeed's request for a bill of particulars.  Defendants ignore the current posture of this case and include in their Motions numerous facts and inferences that have not been admitted into evidence.  (Doc. 151, pp. 1-2, Attach. 1-2; Doc. 161, pp. 8-9; Doc. 162, pp. 1-2).  Because a determination of the as-applied challenges raised in this case requires a record to establish the specific facts of the case, and because such a record does not exist before this Court at this time, any as-applied challenge is premature.

### B. Defendants Greenwell and Staton Fail to Demonstrate that § 1589 is Unconstitutionally Vague or Overbroad

The Greenwell Motion argues that § 1589 is unconstitutional "because it is facially deficient and violative of the First Amendment."  (Doc. 151, p. 1).  Specifically, defendant Greenwell claims that the definition of "serious harm" in the statute is "fatally vague and overbroad" and that "[t]his defect is not related to the government's application of the statute; the statute is facially deficient."  (Doc. 151, p. 4).  Defendant cites and attaches to her Motion two

articles written by attorney Niles Illich (the "Illich articles") but fails to independently explain how those articles have any bearing on the facts and legal issues raised here.

The Staton Motion similarly claims that § 1589 is "overbroad and violates Due Process by encouraging arbitrary enforcement." (Doc. 162, p. 1). Specifically, defendant Staton claims that § 1589, particularly the "threat of serious harm" provision, is overbroad as it infringes upon freedom of speech and association protected by the First Amendment. (Doc. 162, p. 3). Although less clear, defendant Staton also appears to argue that the statute is unconstitutionally vague under the Due Process Clause of the Fifth Amendment. Both Motions appear to make a combination of facial and as-applied challenges.

### 1. No Court Has Found § 1589 to be Unconstitutionally Vague or Overbroad

As previously discussed, § 1589 has been in effect since 2000 and has been used to prosecute hundreds of criminal cases. But neither defendants nor the cited Illich articles cite to a single case holding that § 1589 is unconstitutionally vague or overbroad. This is because multiple courts have examined and rejected arguments that the forced-labor statute's terms "threat of serious harm," "serious harm," or its post-2008 definition of "serious harm" are unconstitutionally vague or overbroad. Defendant Greenwell claims that no court has addressed such a challenge based on the First Amendment's right of freedom of association. (Doc. 151, p. 5). But Niles Illich himself—author of the articles defendant Greenwell relies on in support of her argument—has made this very argument to the Fifth Circuit in *United States v. Toure*, using much of the same language as in his articles and claiming the statute is unconstitutionally vague and overbroad so as to intrude on the First Amendment's protection of freedom of association. *See* Br. for Appellant, *United States v. Toure*, 965 F.3d 393 (5th Cir. 2020) (No. 19-10505). The Fifth Circuit soundly rejected Illich's argument, stating "no court has ever held that § 1589's definition of 'serious harm'

is unconstitutional.  In fact, the courts that have addressed the issue [—including courts analyzing the pre-2008 statute—] have held the opposite."  *United States v. Toure*, 965 F.3d 393, 400 (5th Cir. 2020) (rejecting defendant's argument that § 1589's definition of serious harm is unconstitutionally vague or overbroad); *see also United States v. Calimlim*, 538 F.3d 706, 710-13 (7th Cir. 2008) (rejecting defense arguments that § 1589 (pre-2008 amendment) is unconstitutionally vague or overbroad); *United States v. Wiggins*, No. 11-cr-2420, 2013 WL 12196743 at *2 (W.D. Tex. Mar. 5, 2013) (declining to dismiss an indictment and rejecting a challenge that 18 U.S.C. §§ 1589 and 1591 were unconstitutionally vague); *United States v. Askarkhodjaev*, No. 09-cr-143, 2010 WL 4038783 at *2-6 (W.D. Mo. Sept. 23, 2010) (citing to *Calimlin* in finding defendant's overbreadth and vagueness challenges to § 1589 without merit); *United States v. Garcia*, No. 02-cr-110S, 2003 WL 22956917 at *2-6 (W.D.N.Y. Dec. 2, 2003) (rejecting facial and as-applied vagueness challenges to the pre-2008 statute, stating "[t]he words used in 1589 are common words and 'the likelihood that anyone would not understand any of those common words seems quite remote.'"); *United States v. Sou*, No. 09-cr-345, 2011 WL 3207265 (D. Haw. July 26, 2011) (declining to dismiss an indictment on grounds that the pre-2008 statute was unconstitutionally vague as applied to defendants).  Accordingly, there is no binding or even persuasive authority that supports defendants' position that § 1589 is unconstitutionally vague or overbroad.

## 2. Defendants' Vagueness Challenge Fails Because the Statute Provides Ample Notice of What it Prohibits and Does Not Encourage Arbitrary Enforcement

Although a vagueness challenge generally must be considered as applied to the facts of a particular case, defendant Greenwell, and perhaps defendant Staton, seem to construe their challenge in part as a facial challenge because, as argued through the Illich articles, it implicates First Amendment rights.  No vagueness challenge to § 1589 can succeed in this case.

As an initial matter, because "it is presumable that Congress legislates with knowledge of our basic rules of statutory construction," an act of Congress is to be presumed constitutional and "the court is bound to uphold the constitutionality of a statute when it is reasonably possible to do so." *McNary v. Haitian Refugee Ctr. Inc.*, 498 U.S. 479, 496 (1991).  In general, a penal statute may be void for vagueness under the Fifth Amendment's Due Process Clause if it either (1) fails to "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited" or (2) "encourages arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).  In addition, if a law "threatens to inhibit the exercise of constitutionally protected rights…[such as] the right of free speech or of association, a more stringent vagueness test should apply."  *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 499 (1982).  Defendants' vagueness challenge here fails because § 1589 provides adequate notice to potential offenders of the means prohibited for obtaining or providing another person's labor and does not encourage arbitrary enforcement.

In this case, defendants construe their challenge as facial because, in their view, it implicates First Amendment rights.  But as the Seventh Circuit explained in rejecting a facial vagueness challenge to § 1589 in its pre-2008 form, "the action criminalized by § 1589— 'knowingly provid[ing] or obtain[ing] the labor or services of a person'—is sufficiently removed from anything protected by the First Amendment that we must evaluate it as-applied."  *Calimlim*, 538 F.3d at 710.  In support of its holding, the *Calimlim* court cited to *Hill v. Colorado*, in which the Supreme Court rejected a vagueness challenge on First Amendment grounds to a criminal statute prohibiting any person from knowingly approaching within eight feet of another person near a health care facility without that person's consent.  530 U.S. 703.  In *Hill*, the Court found that the *scienter* requirement of the statute—meaning the statute applied only to a person who

"knowingly" engaged in the conduct at issue—ameliorated concerns as to an ordinary person's understanding of what the statute prohibited. *See id* at 733. Indeed, in cases raising vagueness challenges to criminal statutes, courts have repeatedly held that, "especially with regard to the adequacy of notice to the complainant that his conduct is proscribed," the requirement in a criminal statute that the government prove intent or knowledge does "much to destroy any force in the argument that application of the [statute] would be so unfair that it must be held invalid." *United States v. Jackson*, 935 F.2d 832, 830 (7th Cir. 1991). Section 1589 contains an express *scienter* requirement, as does one of the three means by which labor can be obtained criminally: "by means of any scheme . . . intended to cause the person to believe . . . ." 18 U.S.C. § 1589(2) (2000). As the *Calimlim* court explained, "[o]btaining the services of another person is not illegal; it is illegal only when accompanied by one of the three given circumstances, and the jury must find that the defendant knew that the circumstance existed." *Calimlim*, 538 F.3d at 711. Where, as here, a statute contains a scienter requirement, a defendant "bears an especially heavy burden in raising his vagueness challenge." *United States v. Collins*, 272 F.3d 984, 989 (7th Cir. 2001).

Defendants also invoke various hypothetical situations, only some of which are the sorts of intimate associations or speech the First Amendment protects, to support their vagueness challenge. (Doc. 151, Attach. 3, pp. 19-21; Doc. 162, p. 5). But the Supreme Court has held that "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications." *Hill*, 530 U.S. at 733 (internal quotations omitted). As illustrated by the hundreds of valid, actual prosecutions under § 1589 since its inception in 2000, and courts' consistent rejection of constitutional challenges to the statute, § 1589 is valid "in the vast majority" of

intended applications.  *Id.*  Accordingly, defendants simply have not met the heavy burden required to successfully argue that § 1589 is unconstitutionally vague on its face.

Defendants' as-applied challenge to the statute, while procedurally premature, also fails on the merits, as demonstrated by *Calimlim*, where the Seventh Circuit rejected a vagueness challenge to the version of § 1589 in existence before the 2008 amendment.  The defendants in *Calimlim* were convicted of forced labor for keeping a young Filipina woman as a domestic servant for 19 years without providing meaningful earnings, access to the outside world, medical care, or valid immigration documents.  *Calimlim*, 538 F.3d at 709.  The defendants also told the victim that, if anyone discovered her, she would be arrested and deported, and the defendants no longer would send money to her family.  *Id.*  On appeal, the Seventh Circuit rejected the defendants' arguments that § 1589's terms "serious harm" and "threatened abuse of the law or legal process" were vague (and overbroad) to the extend they touched on an employer's ability to explain true legal consequences—of undocumented status, for example—to employees.  *Id.* at 710.  The court held that as applied to the defendants, § 1589 provided sufficient notice that their conduct was illegal because it specified the prohibited means for obtaining labor and included a *scienter* requirement of knowledge that those coercive circumstances existed, stating "[t]aken as a whole, the statute provides ample notice that it prohibits intentionally creating the belief that serious harm is possible, either at the defendant's hands or those of others."  *Id.* at 711.  Furthermore, the court held the statute was not arbitrarily enforced against the defendants where its language prohibited coercive labor practices, the precise basis on which they were indicted.  *Id.* at 711-12.

In the case at hand, defendants Greenwell and Staton cannot successfully claim that they lacked sufficient notice that their conduct was illegal where § 1589 expressly prohibited them from "knowingly" using "threats of serious harm to, and physical restraint against" any person, as well

as "any scheme, plan, and pattern intended to cause the person to believe that, if the person and another person would suffer serious harm" to compel another person's labor.  18 U.S.C. § 1589 (2000).  That is, "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others," even where First Amendment rights may be implicated.  *Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010) (citation omitted); *see also United States v. McRae*, 702 F.3d 806, 837-38 (5th Cir. 2012) (same). Indeed, the government indicted defendants for compelling the victim's labor and services through these prohibited means.  (Doc. 1).  Whatever the outermost bounds of § 1589, there is no question that the statute proscribed these defendants' cruel treatment of the victims, as described in the 17-page Indictment:  The defendants in this case used a "scheme, plan, and pattern" of serious physical, psychological, and emotional harm, and threats of the same, to compel non-family members, many of whom were minors, to work for them for years without compensation.  (Doc. 1).  This is a straightforward and non-arbitrary application of § 1589 and, accordingly, defendants' as-applied challenge fails.[5]

### 3.  Section 1589 Is Not Unconstitutionally Overbroad

Defendants' overbreadth challenge also fails.  The overbreadth doctrine allows for the facial invalidation of a law that inhibits the exercise of First Amendment rights only if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep."  *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008) (quoting *New York v. Ferber*, 458 U.S. 747, 769-71 (1982)).  Defendants

---

[5] Moreover, any vagueness challenge to § 1589 is necessarily weaker today than when *Calimlim* was decided in 2008 as, later in 2008, Congress further clarified the plain meaning of "serious harm," specifying the types of serious harm the statute prohibits and that they must be assessed from the perspective of a reasonable person of the victim's same background and circumstances. *See* 18 U.S.C. § 1589(c)(2).

Greenwell and Staton bear a heavy burden in mounting this challenge, as "the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of the City Council of the City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Indeed, multiple courts have rejected similar overbreadth challenges to § 1589. *See, e.g., Calimlim*, 538 F.3d at 710-12; *Askarkhodjaev*, 2010 WL 4038783 at *2-6; *Toure*, 965 F.3d at 400.

The pre-2008 and current § 1589 provisions involving the "threat of serious harm" and "serious harm" apply to a substantial amount of conduct that in no way implicates the First Amendment's free association or free speech protections. The statute's "plainly legitimate sweep" criminalizes exploitative labor practices akin to the conditions of slavery and involuntary servitude proscribed by the Thirteenth Amendment. *See* 18 U.S.C. §§ 1589(1) and (2) (2000); 22 U.S.C. § 7101(b)(13). Specifically, the pre-2008 statute prohibited, in relevant part, knowingly providing or obtaining a person's labor "threats of serious harm to that person or another"; the current statute prohibits, in relevant part, knowingly providing or obtaining a person's labor through the use of harm, such as physical, psychological, financial, or reputational harm, that is "serious" to a reasonable person of the victim's background and in the same circumstances. 18 U.S.C. § 1589 (2000); 18 U.S.C. §§ 1589(a)(2), (a)(4), and (c)(2). The First Amendment does not provide protections to these modern-day conditions of slavery. Furthermore, the statute's plain terms do not prohibit an employer procuring labor through everyday pressures and demands, as the Illich articles would suggest.

### a. Section 1589 is Not Overbroad in the Context of Protected Association

Any claim that a "substantial number" of § 1589 applications are unconstitutional in relation to the statute's legitimate criminalization of obtaining or providing labor by the specified

means is a gross exaggeration.  Indeed, the vast majority of § 1589 applications do not tread near associations protected by the First Amendment.

In the context of freedom of association, defendant Greenwell—through hypothetical situations set forth in the Illich articles—asserts that § 1589 implicates "a huge variety of constitutionally protected conduct associated with the raising of children, the supervision of employees, the education of children or adults, the rehabilitation of prisoners, the training of aspiring soldiers, etc." (Doc. 151, Attach. 3, p. 25).  Defendant Staton makes similar assertions. (Doc. 162, p. 5).  But the Supreme Court has explained that the Constitution does not "recognize[] a generalized right of 'social association' . . . ." *City of Dallis v. Stanglin*, 490 U.S. 19, 25 (1989); *see also Dillon v. Twin Peaks Charter Academy*, 406 Fed. Appx. 253, 259 (10th Cir. 2010) (recognizing that *Stanglin* "limited the protection of association" and held that there is no "generalized right of free association").  Instead, the First Amendment protects, in relevant part, "certain intimate or private relationships" that commonly involve "deep attachments and commitments" within a "special community of thoughts, experiences, and beliefs," including, for example, marriage, bearing and raising children, and living with family members.  *Board of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 544-46 (1987).

In listing hypothetical relationships that § 1589 might disrupt, defendants cite no actual prosecutions other than *United States v. Toviave*, 761 F.3d 623 (6th Cir. 2014), discussed below. Only the example of the parent-child connection would fall within the realm of First Amendment-protected associations.  However, these hypotheticals—such as a parent threatening to take away Legos for three days if the child does not put away the Legos or a parent taking a way a phone to induce a child to perform a household chore—do not fall under the statute's plain ambit.  These scenarios do not involve a parent's "knowing" use or threat of "serious harm" against the child,

even when judged from the perspective of a "reasonable" child, and hardly involve "labor or services." *See* 18 U.S.C. § 1589 (2000); 18 U.S.C. § 1589(a)(2) and (c)(2).

Furthermore, despite defendants' attempts to argue otherwise, *Toviave* does not demonstrate that § 1589 is overbroad—that a "substantial number" of § 1589 applications are unconstitutional—in relation to its "plainly legitimate sweep." *Washington State Grange* 552 U.S. at 449 n.6. Rather, the Sixth Circuit in *Toviave* simply limited the statute's outer reach to avoid intruding on the normal role of lawful caregivers, which state law properly regulates. That court found the evidence insufficient to support a forced labor conviction of a defendant who had brought young relatives to live with him in the United States, where he educated them and treated them as family but also disciplined them harshly and required them to provide household help. *See Toviave*, 761 F.3d at 624. The *Toviave* court stated that, to avoid intruding on parental rights and disrupting the balance of federal and state powers, it would not construe § 1589 to "make it a crime for a person *in loco parentis* to require household chores, or make[] child abuse a federal crime." *See id.* at 625, 629. In so holding, however, the court recognized that even "a parent or guardian can commit forced labor, and is not immunized by that status" where their conduct violates the statute's plain text. *Id.* at 626.

The court did not find § 1589 to be unconstitutional or address a facial overbreadth challenge to § 1589. *See id.* Rather, in determining there was insufficient evidence for the conviction, the court focused on the facts, giving great weight to the fact that defendant "had an almost single-minded fixation on making sure the children got an education" and allowed them to participate fully in school, family, and community life. *Id.* at 629. The court explained that its ruling did not "undermine[] the reasoning of the forced labor decisions of . . . our sister circuits" such as *Calimlim* and *United States v. Nnaji*, 447 Fed. Appx. 558 (5th Cir. 2011), in which

defendants did not educate their victims and used "more extreme isolation" to compel their labor. *Id.* at 629-30. The ruling in *Toviave* is so narrow, in fact, that a year after issuing *Toviave*, the Sixth Circuit declined to apply it to a case involving defendants who compelled their roommate to perform basic household chores. *See United States v. Callahan*, 801 F.3d 606, 619-20 (6th Cir. 2015) (rejecting defendants' reliance on *Toviave* and noting "we did *not* hold that household chores do not constitute labor or services" regarding the *Toviave* decision). In this case, just as in *Calimlim* but in stark contrast with *Toviave*, defendants' exploitations of their victims—non-relatives taken from their parents to work, often from childhood through adulthood, under conditions of physical and emotional abuse and isolation, without adequate schooling or medical care—falls within § 1589's "plainly legitimate sweep." (Doc. 1).

In sum, defendants' argument that § 1589 is overbroad fails on the merits because defendants cannot show that "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Washington State Grange*, 552 U.S. at 449 n.6.

### b. Section 1589 Is Not Overbroad in the Context of Protected Speech

Defendant Staton also argues that § 1589 is overbroad as its provisions relating to "threat of serious harm" and "serious harm" implicate protected speech. But, as defendant Staton minimizes when discussing the *Calimlim* decision, the Seventh Circuit in *Calimlim* addressed a similar overbreadth challenge, concluding that "§ 1589 does not criminalize any speech; it bans behavior that may involve speech. This blunts any overbreadth attack. *See* [*City of Chicago v. Morales*, 527 U.S. 41, 52-53 (1999)] (noting that an unconstitutionally vague statute criminalizing 'loitering,' which may or may not involve speech and association, was not subject to an overbreadth attack)." *Calimlim*, 538 F.3d at 712. The court in *Calimlim* further stated that

"[b]ecause of the *scienter* requirement, any speech involved must be a threat or else intended to achieve an end prohibited by law.  To the extent that § 1589 raises First Amendment concerns, the *scienter* requirement limits the prohibited speech to unprotected speech."[6]  Accordingly, defendant Staton's overbreadth challenge to § 1589 as it relates to protected speech also fails.

### C.  The Tenth Amendment Does Not Require the Court to Dismiss the Indictment

#### 1.  Defendant Aubrey Jenkins' Argument that § 1589 As Applied to This Case Is an Impermissible Federalization of a State Crime is Premature

Defendant Aubrey Jenkins argues that the Indictment should be dismissed because applying § 1589 to his conduct would upset the federal-state balance in violation of the Tenth Amendment.[7]  (Doc. 161, p. 4).  Specifically, Aubrey Jenkins relies on *Toviave* to claim that the Indictment should be dismissed because his alleged conduct amounts to no more than child abuse, "child abuse is a quintessentially state crime," and application of § 1589 to defendant's conduct is "impermissible federal overreach" in violation of the Tenth Amendment.  *Id.*

As discussed above (*see* III.A), any challenge relating to constitutionality of § 1589 as applied to the particular facts of this case is premature.  The *Toviave* decision, analyzed in detail above (*see* III.B.3.a) arose out of defendant's post-trial appeal of his conviction, and the Seventh Circuit had the benefit of a fully developed trial record in determining that the particular facts of the case, as presented at trial, were insufficient to support the conviction.  *See Toviave*, 761 F.3d

---

[6] Note that *Calimlim* was decided after *Virginia v. Black*, 538 U.S. 343, 359 (2003), which defined true threats as "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals."  The *Calimlim* court did not engage in a true threat analysis.

[7] Although defendant Aubrey Jenkins characterizes his motion as jurisdictional under Federal Rule of Criminal Procedure 12(b)(2), his argument is more akin to an as-applied challenge or a sufficiency challenge, akin to that in *Toviave*.  As a result, defendant Aubrey Jenkins' challenge is properly assessed under Rule 12(b)(3).

at 623-25.  In the case at hand, as noted above (*see* III.A), the only facts in the record are those contained in the Indictment.  *See Todd*, 446 F.3d at 1067.  As discussed in detail below (*see* III.D) and in the governments' response to defendant Majeed's request for a bill of particulars, the Indictment sufficiently pleads violations of the offenses charged and, accordingly, it would not be appropriate to apply the reasoning of *Toviave* to dismiss the Indictment at this pretrial stage.

### 2.  The Facts in This Case are Distinguishable from those in *Toviave* and, therefore, the Narrow Holding of *Toviave* Does Not Apply

Defendant offers extraneous facts and favorably-drawn inferences to urge the Court to interpret the facts alleged in the Indictment as mere child abuse and apply the *Toviave* reasoning to dismiss the Indictment.  (Doc. 161, pp. 8-9).  As discussed in detail above (*see* III.B.3.a), the *Toviave* court confined its ruling to a situation in which a parent or person standing *in loco parentis* compelled their child to perform basic household chores.  *Toviave*, 761 F.3d at 626; *see also United States v. Callahan*, 801 F.3d 606, 619-20 (6th Cir. 2015) (declining to apply *Toviave* to a case involving defendants who compelled their roommate to perform basic household chores, stating "we did *not* hold that household chores do not constitute labor or services" in *Toviave*).  Because the facts alleged in the Indictment are distinguishable from those in *Toviave*, the *Toviave* reasoning does not apply to a pretrial challenge to the Indictment.

First, the nature of the labor or services at issue in this case differs from those in *Toviave.* The children in *Toviave* were required to perform only household tasks, such as cooking, cleaning, laundry, and childcare.  *Toviave*, 761 F.3d at 624.  The victims in this case also performed such household tasks but, in addition, they worked "long hours without pay in UNOI-owned businesses such as bakeries, restaurants, gas stations, a sewing factory, a factory that produced personal hygiene products, and others."  (Doc. 1, ¶ 30).  Because the scope of the victims' labor goes far beyond basic household chores, defendants' use of prohibited means to compel those services

20

constitutes forced labor, even when analyzed in the limited context of a guardian-child relationship.

Second, the relationship between defendants and the victims also is distinguishable from that in *Toviave*. The defendant in *Toviave* was a relative of the four children at issue and the court confined its holding accordingly. *See Toviave*, 761 F.3d at 626. In this case, defendants were not relatives of the victims. Rather, defendants were part of UNOI, which encouraged and enticed parents to send their children to Kansas for the purpose of attending a UNOI-run school, without informing parents that "their children would work extended hours, sometimes in lieu of attending school, or be sent to other UNOI businesses around the country . . . ." (Doc. 1, ¶ 12). Defendants may have been guardians in name, but they did not enjoy the close familial relationship central to *Toviave*. Outside of that unique context, adults are not entitled to compel children to perform household labor or other labor and services, as alleged here. *Toviave*, 761 F.3d at 626 (noting that a parent or guardian who uses a prohibited means to compel services outside household chores can be prosecuted under § 1589).

Finally, this case differs from *Toviave* in that defendants' coercive actions were used exclusively to compel the victims' labor. In *Toviave*, the court emphasized that the defendant's use of coercion was designed to compel the children to perform household chores and improve their academic performance. *Toviave*, 761 F.3d at 629. As a result, the defendant in *Toviave* sent his children to school, hired a tutor for them, enrolled them in sports, took them on family vacations, and generally had them participate fully in school, family, and community life. *See id.* The *Toviave* court distinguished the defendant's actions with other forced labor where the coercive means, including social isolation, were related exclusively to the desired labor and services. *See id.* at 629-30.

By contrast, defendants' coercive tactics in this case were implemented compel the victims' labor and services. As stated in the Indictment, the victims in this case were isolated from the community and did not receive a legitimate education as they often worked in lieu of attending school. (Doc. 1, ¶¶ 12-32). Victims were even sent to other UNOI businesses around the country to work. (Doc. 1, ¶ 12). Defendant Aubrey Jenkins' conclusory statements to the contrary—that the physical abuse of the victims had no relationship to compelling labor—should be disregarded as they are favorable inferences not contained within the Indictment. (Doc. 161, pp. 8-9). These facts starkly contrast with the facts in *Toviave*, and show that defendants' coercive actions were designed to compel the victims' labor. *Id.*

Accordingly, because the type of labor, the unique nature of the parent-child relationship, and the broader circumstances of the children's lives are the key facts supporting the decision in *Toviave*, and because those key facts are distinguishable from the facts alleged in the Indictment, the court's decision in *Toviave* is inapplicable to the case at hand.

### 3. Federalization of Forced Labor is Authorized by the Constitution and Therefore Does Not Violate the Principles of Federalism

Citing *Toviave*, defendant Aubrey Jenkins claims the conduct underlying the charges in the Indictment does not constitute the federal crime of forced labor and application of § 1589 to his conduct would upset the federal-state balance in violation of the Tenth Amendment. (Doc. 161, p. 9). Specifically, defendant claims that the conduct alleged in the Indictment is "essentially" child abuse, which the state has the power to regulate and prosecute. (Doc. 161, pp. 1, 9). The Court should reject defendant's argument because it misunderstands the principles of federalism and the scope of § 1589.

The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the

people." U.S. Const., Amend. X.  Thus, "when the Constitution explicitly grants Congress authority to act, the Tenth Amendment gives way."  *See United States v. Hatch*, 722 F.3d 1193, 1202 (10th Cir. 2013) (upholding constitutionality of 18 U.S.C. § 249(a)(1), a federal hate crime statute passed pursuant to Congress's Thirteenth Amendment power, and finding no support for defendant's argument that the Tenth Amendment imposes limits on Congress's Thirteenth Amendment powers); *see also New York v. United States*, 505 U.S. 144, 156 (1992) ("If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States.").

As explained above (*see* II), the Thirteenth Amendment gives Congress the explicit authority to enforce its prohibitions, and the Supreme Court has explicitly recognized Congress's authority to "determine what are the badges and incidents of slavery, and the authority to translate that determination into effective legislation," provided its determination is rational.  *Jones v. Alfred H. Mayer*, 392 U.S. 409, 439-40 (1968).  As noted in the *Peonage Cases*, "[w]hen Congress, in the exercise of power granted by the Constitution, declares certain acts criminal offenses against the United States, no state or territorial law or custom, or the absence of them, can purge the offense of its criminality, or suspend, or control, or effect, the right of the United States to punish that offense."  123 F. 671, 678 (M.D. Ala. 1903).  Indeed, defendant is unable to cite a single case finding that Congress's enactment of § 1589 was an improper exercise of its Thirteenth Amendment authority.  *See, e.g., Toviave*, 761 F.3d at 629 (noting that § 1589 was "passed to implement the Thirteenth Amendment's [prohibition] against slavery or involuntary servitude"); *United States v. Dann*, 652 F.3d 1160, 1169 (9th Cir. 2011) ("Congress intended to reach cases in which persons are held in a condition of servitude through nonviolent coercion," as well as through "physical or legal coercion"); *Calimlim*; 538 F.3d at 714 ("Section 1589 is not written in terms

limited to overt physical coercion, and we know that when Congress amended the statute it expanded the definition of involuntary servitude to include nonphysical forms of coercion."). Defendant, however, seems to insist that the reach of Congress's power under the Thirteenth Amendment does not extend to his conduct.  He is incorrect.

First, providing or obtaining the labor of any person, including a minor child, through prohibited means specified in § 1589 is a matter of federal concern.  As discussed more fully above (*see* II), Congress enacted § 1589 pursuant to its Thirteenth Amendment authority to "reach cases in which persons are held in a condition of servitude through nonviolent coercion" as well as through "physical or legal coercion," *Dann*, 652 F.3d at 1169, and "address the increasingly subtle methods" traffickers use to "place their victims in modern-day slavery."  H.R. Conf. Rep. No. 939, at 101.  Surely, the origin and legislative history of the statute indicate that Congress believed forced labor to be a matter of great federal concern.

Second, defendant Aubrey Jenkins' assertion that applying § 1589 to his conduct, "which amount[s] . . . to child abuse would upset the balance of power by transferring to the federal government the authority to prosecute a quintessential state crime" misunderstands the targeted reach of § 1589 and the doctrine of dual sovereignty.  (Doc. 161, p. 9).  Section 1589 bars only the knowing use of specified prohibited means to procure the labor or services of a person.  *See* 18 U.S.C. § 1589.  Simple child abuse does not meet the criteria for prosecution under § 1589, and simple child abuse alone is not what is alleged in the Indictment.[8]  *See Toviave*, 761 F.3d at 625. Section 1589 does not usurp or otherwise interfere with the states' power to prosecute child abuse or even forced labor.  It merely makes a federal prosecution available for cases of forced labor, in

---

[8] Any argument that the Indictment is insufficient is addressed below (*see* III.D) and in the government's response to defendant Majeed's request for a bill of particulars.

addition to any state prosecution.  This arrangement is "commonplace under the dual-sovereign

concept and involve[s] no infringement per se of states' sovereignty in the administration of their

criminal laws."  *United States v. Johnson*, 114 F.3d 476, 481 (4th Cir. 1997).  Indeed, as explained

more fully above (*see* III.B.3.a), the court in *Toviave* limited the particular reach of the statute so

that it would not apply to parents who compel their children to perform household tasks in certain

circumstances.  But as discussed above (*see* III.B.3.a), the facts of this case are distinguishable

from those in *Toviave* and its reasoning does not apply here.

### D. The Indictment Sufficiently Pleads the Offenses Charged and, Accordingly, Defendant Staton's Sufficiency Argument Fails

In his Motion, Defendant Staton also argues that the allegations set forth in the Indictment

fail to establish the offenses charged.  Defendant is incorrect.  The Indictment is sufficient, as it

contains the essential elements of the offense charged and fairly informs the defendant of the

charges against which he must defend.  *See United States v. Poole*, 929 F.2d 1476, 1479 (10th Cir.

1991).  Under Federal Rule of Criminal Procedure 7(c)(1), an indictment is "a plain, concise, and

definite written statement of the essential facts constituting the offense charged . . . .  A count may

allege that the means by which the defendant committed the offense are unknown or that the

defendant committed it by one or more specified means."  An indictment is not required to set

forth all the underlying facts of the case, but rather the "essential facts," which are those facts that

"put the defendant on fair notice of the charge against which he must defendant and [that] will

enable him to plead double jeopardy in a subsequent prosecution."  *United States v. Wood*, 958

F.2d 963, 974 (10th Cir. 1992) (citations omitted).  An indictment "is sufficient if it contains the

elements of the offense charged, putting the defendant on fair notice of the charge against which

he must defend, and if it enables a defendant to assert an acquittal or conviction in order to prevent

being placed in jeopardy twice for the same offense."  *Poole*, 929 F.2d at 1479 (quotation omitted);

*Hamling v. United States*, 418 U.S. 87, 117 (1974).   As discussed above (*see* III.A), when considering a motion to dismiss an indictment based on sufficiency, the Court should consider the facts set forth in the Indictment as true, and disregard extraneous facts or inferences supplied by defendant.  *See Todd*, 446 F.3d at 1067.

In this case, the detailed facts set forth in the 17-page speaking Indictment allege every element of the crimes charged—conspiracy to commit forced labor and forced labor—and allege the means by which defendant committed the offenses.   The speaking Indictment contains more than sufficient underlying facts to put defendant on fair notice of the charges against him and enable him to plead double jeopardy in any subsequent prosecution.  *See Wood*, 958 F.2d at 974. The government points the Court to its response to defendant Majeed's request for a bill of particulars for a more fulsome analysis of the adequacy of the Indictment.   Accordingly, the Indictment sufficiently pleads the offenses charged.

## IV.    CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny defendants' three Motions.

Respectfully submitted,

KATE E. BRUBACHER
UNITED STATES ATTORNEY

By: */s/ Ryan J. Huschka*
Ryan J. Huschka
Assistant United States Attorney
United States Attorney's Office for the
District of Kansas
500 State Avenue, Suite 360
Kansas City, KS 66101
Phone:  913-551-6730
Fax:  913-551-6754
Email:  Ryan.Huschka@usdoj.gov
KS Bar No. 23840

KRISTEN CLARKE
ASSISTANT ATTORNEY GENERAL

By: */s/ Kate A. Alexander*
Kate A. Alexander
Trial Attorney
USDOJ Civil Rights Division
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Phone:  202-353-3539
Email:  Kate.Alexander@usdoj.gov
FL Bar No. 27393

By: */s/ Maryam Zhuravitsky*
Maryam Zhuravitsky
Trial Attorney
USDOJ Civil Rights Division
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Phone:  202-532-3592
Email:  Maryam.Zhuravitsky@usdoj.gov
MD Bar No. 1312190348

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2023, I caused the foregoing pleading to be filed with the

Clerk of the Court, with a true and accurate copy provided to each counsel of record in the case.

*/s/ Ryan J. Huschka*
Ryan J. Huschka
Assistant United States Attorney
United States Attorney's Office for the
District of Kansas