## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **Plaintiff,** | |
| **v.** | **Case No. 21-20060-JAR** |
| **KAABA MAJEED,** | |
| **YUNUS RASSOUL,** | |
| **a.k.a. YUNUS RASSOULL,** | |
| **JAMES STATON,** | |
| **a.k.a. ADAM WINTHROP,** | |
| **RANDOLPH RODNEY HADLEY,** | |
| **DANIEL AUBREY JENKINS,** | |
| **DANA PEACH,** | |
| **Defendants.** | |

## GOVERNMENT'S OMNIBUS RESPONSE TO DEFENDANTS' MOTIONS IN LIMINE

COMES NOW the United States of America, by and through the undersigned attorneys, and respectfully submits this omnibus response to defendants' motions in limine, based on the following points and authorities and any others that may be cited at a hearing on the motions.

## I.    RELEVANT PROCEDURAL BACKGROUND

On October 20, 2021, a Grand Jury returned an eight-count Indictment charging the eight defendants with conspiracy to commit forced labor, in violation of 18 U.S.C. §§ 371 and 1589, and forced labor, in violation of 18 U.S.C. § 1589. (Doc. 1). All eight defendants are named in the Indictment as members of the conspiracy; different combinations of defendants are named in each of the seven forced labor counts. On March 2, 2022, the Court designated this case as complex. (Doc. 87). Defendants filed various dispositive motions, including motions to dismiss the Indictment as time barred under the applicable statute of limitations, which the Court denied. (Docs. 206-208). The Court has scheduled a jury trial to begin on March 4, 2024.

On January 12, 2024, the government filed a motion in limine to admit relevant direct and intrinsic evidence, or alternatively under Rule 404(b). (Doc. 233). On the same day, defendant Staton filed an omnibus motion in limine ("defendant Staton's motion"), which was joined by defendant Hadley. (Docs. 238, 250). On January 17, 2024, defendant Majeed filed a motion in limine ("defendant Majeed's motion"). (Doc. 247). On January 19, 2024, defendant Hadley filed a motion in limine ("defendant Hadley's motion"), defendant Jenkins filed a motion in limine ("defendant Jenkins' motion"), and defendant Peach filed a motion in limine ("defendant Peach's motion"). (Docs. 250-252). On January 26, 2024, defendant Majeed moved to join defendant Jenkins' motion (Doc. 251) and defendant Hadley's motion (Doc. 250). (Doc. 264). The government hereby responds to each issue raised in defendants' motions.

## II.    ARGUMENT

### A.    Testimony About Sexual Abuse and Underage Marriage is Relevant as Direct and Intrinsic Evidence and is Relevant to Defendants' Statute of Limitations Defense (Docs. 238, 250, 251)

In their motions, defendants Staton and Jenkins request that the Court prohibit the government from presenting evidence relating to sexual abuse and underage marriage within UNOI. (Doc. 238, p. 4-6; Doc. 251, p. 1-2). Defendant Hadley moved to join defendant Staton's motion. (Doc. 250). Neither defendant cites a single case in support of this argument; rather defendants recite Federal Rule of Evidence 401 in support of their argument that this evidence is not relevant and Federal Rule of Evidence 403 in support of their argument that the "danger of unfair prejudice" relating to this evidence "substantially outweighs" the evidence's probative value. *Id.* Defendants are incorrect in their understanding of the law and the Court should deny these requests. Not only is this evidence direct and intrinsic evidence of the charged crimes and

admissible under a Rule 403 analysis, but it also is relevant to the defendants' statute of limitations defenses.

> **1. Evidence Relating to Sexual Abuse and Underage Marriage is Relevant Direct and Intrinsic Evidence and Should Not Be Excluded Under Rule 403**

As an initial matter, the government addressed this very issue in its motion in limine to admit evidence as direct and intrinsic evidence, or alternatively under Rule 404(b) ("government's motion in limine") and refers the Court to that filing.  (Doc. 233).  As discussed in detail in the government's motion in limine, evidence about sexual abuse and underage or forced marriage is not only direct proof of the conspiracy and the substantive forced labor committed by defendants, but it also is "inextricably intertwined with the charged conduct; occurred within the same time frame as the activity in the conspiracy being charged; was a necessary preliminary to the charged activity; provide[s] direct proof of the defendant[s'] involvement with the charged crimes; was entirely germane background information, [and] directly connected to the factual circumstances of the crime . . . ."  *United States v. Cushing*, 10 F.4th 1055, 1074 (10th Cir. 2021) (citing *United States v. Kupfer*, 797 F.3d 1233, 1238 (10th Cir. 2015)).  Specifically, the sexual abuse and underage or forced marriage "contributed to the climate of fear created by the defendants to coerce [the victims] to remain working" and, accordingly, is directly relevant to an element the government must prove at trial, namely the prohibited means the defendants used to compel the labor.  *United States v. Aman*, No. 3:19-cr-00085, 2022 U.S. Dist. LEXIS 146651 (E.D. Va. Aug. 16, 2022) (affirming forced labor convictions); *see also United States v. Kaur*, No. 3:23-cr-00092, Docs. 49, 138, 189-191, 196 (E.D. Va.) (admitting, without significant analysis, evidence at trial of forced marriage between a defendant and the victim in a case involving charges of conspiracy to commit forced labor and forced labor); Doc. 233, p. 4-6, 32-33.

Indeed, multiple courts have noted that sexual abuse is "a badge and incident of servitude which is distressingly common, not just historically, but for young women who find themselves in coercive circumstances today." *United States v. Udeozor*, 515 F.3d 260, 266 (4th Cir. 2008) (upholding a district court's admission of evidence that co-conspirator had sexually abused the minor victim, finding that "sexual abuse of the victim was one of the forms of force used to keep the minor victim in the condition of involuntary servitude . . . [and was] [t]herefore . . . part and parcel of a conspiracy" in upholding defendant's convictions, including for conspiracy to violate 18 U.S.C. § 1584, the predecessor to 18 U.S.C. § 1589); *United States v. Kaufman*, 546 F.3d 1242 (10th Cir. 2008) (upholding defendants' convictions relating to forced labor and involuntary servitude and quoting *Udeozor* for the proposition that "sexual abuse was 'a badge and incident of servitude'"). The congressional purpose and findings relating to enactment of the Victims of Trafficking and Violence Protection Act of 2000 ("TVPA") further supports the argument that § 1589 reaches defendants who use sexual abuse to compel the labor of another person: "Victims are often forced through physical violence to engage in sex acts or perform slavery-like labor. Such force includes rape and other forms of sexual abuse, torture, starvation, imprisonment, threats, psychological abuse, and coercion." Pub. L. No. 106-386, 114 Stat. 1464, 1467 (2000) (codified at 22 U.S.C. § 7101(b)(6)).

Furthermore, as discussed in detail in the government's motion in limine, this evidence does not create a danger of unfair prejudice that substantially outweighs its probative value. Fed. R. Evid. 403; *United States v. Lambert*, 995 F.2d 1006, 1007-08 (10th Cir. 1993); *see also* Doc. 233, p. 29-33. The Tenth Circuit has explained that "[u]nfair prejudice in the Rule 403 context means an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one . . . . Even if this type of prejudice is found, it must *substantially*

4

outweigh the probative value of the evidence in order to be excluded under Rule 403." Accordingly, only in "extraordinary" and rare circumstances should a court exclude relevant evidence under Rule 403.  *United States v. Irving*, 665 F.3d 1184, 1213 (10th Cir. 2011).

In this case, the probative value of this evidence is extremely high—it bears directly upon the climate of fear defendants created, using prohibited means, in order to compel the labor and services of the victims.  By contrast, this evidence does not—any more than any other evidence in this case—create any danger of "unfair prejudice" that substantially outweighs the evidence's probative value.  Fed. R. Evid. 403.  That is, given the charges in this case, the ages and vulnerabilities of the minor victims, and the overt acts—including acts of violence—set forth in the Indictment, the evidence at issue is not more inflammatory than other evidence or charged conduct and will not "provoke[] an emotional response in the jury or otherwise tend[] to affect adversely the jury's attitude toward the defendant[s] *wholly apart* from its judgment as to [their] guilt or innocence of the crime[s] charged."  *United States v. Merritt*, 961 F.3d 1105, 1115 (10th Cir. 2020) (in a case involving a drunk-driving murder, upholding admission of evidence of defendant's prior two drunk-driving incidents); *see also United States v. Piette*, 45 F.4th 1142, 1153-54 (10th Cir. 2022) (affirming admission of evidence of defendant's prior molestation of his two daughters—not the charged victims—in a child molestation case and concluding that, despite the "depravity of the molestation evidence," any resulting prejudice was not "particularly unfair" and did not "substantially outweigh the evidence's probative value"); *United States v. Herrera*, 51 F. 4th 1226, 1263 (10th Cir. 2022) (upholding admission of evidence regarding a co-defendant's plot to murder corrections officials, as well as evidence of defendants' prior assault and murder, stating that the court did not "need to exclude the evidence based on its sensationalist quality" and that the "sensationalism . . . didn't necessarily trump its probative value").

In fact, various courts have admitted evidence of sexual abuse as relevant direct evidence of the climate of fear constituting a "a scheme, plan, or pattern" used by a defendant to compel the labor of a victim. *See Udeozor*, 515 F.3d at 266 (affirming district court's ruling to admit "evidence that sexual abuse was [one of the forms of force] used to make the victim believe she had no choice but to comply with the [defendant's] demands"); *United States v. Marcus*, 487 F. Supp. 2d 289, 310 (E.D.N.Y. 2007), *rev'd in part, vacated in part, and remanded on other grounds*, 628 F.3d 36 (2d Cir. 2010) (affirming forced labor and sex trafficking convictions where district court admitted evidence that defendant engaged in sexual violence against the victim and forced her to continue a sexual relationship with him against her will, and finding that a jury could reasonably find that defendant obtained labor "through a persistent pattern of punishing [the victim] when he was dissatisfied with her work" which created "a climate of fear that was sufficient to cause her to perform labor or services against her will"); *United States v. Webster*, 2011 WL 8478276 (9th Cir. 2011) (affirming convictions including sex trafficking by force, fraud, or coercion, and finding evidence at trial, including evidence of defendant's sexual abuse of victims, showed that defendant's "pattern of fostering an environment of fear of physical harm where violations of rules were severely punished constituted a 'scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person'"); *United States v. Carson*, 870 F.3d 584, 598-601 (7th Cir. 2017) (affirming admission of evidence that defendant had raped one trafficking victim in the presence of another woman and that woman's newborn child, stating that the presence of others was "a key part of the message from the defendant that 'I control you and can do as I please and I have so much power that no one else will come to your aid, even if they are sitting right in the room'"); *United States v. Wilkins*, 538 F. Supp. 49, 72 (D.D.C. 2009) (admitting past physical and sexual violence as

"direct, intrinsic evidence of coercion [defendant] used to cause the complainants to engage in commercial sex acts").

## 2. Evidence Relating to Sexual Abuse is Relevant to Defendants' Statute-of-Limitations Defense

Evidence of sexual abuse is particularly relevant to the statute-of-limitations defense that defendants have raised.  That is, each defendant has either directly raised a statute of limitations defense in a motion to dismiss the Indictment (Docs. 122, 157, 163), or has joined in a motion raising such a defense.  (Docs. 152-153, 155, 161, 167, 169, 170-173).  The government filed a consolidated opposition to these motions.  (Doc. 185).  In an omnibus order, the Court engaged in a thorough analysis of the statutes of limitations applicable in this case and denied each motion to dismiss.  (Doc. 206).

As the government argued in its consolidated opposition to the motions to dismiss on statute of limitations grounds, and as the Court acknowledged in its order, "[a] claim that a criminal charge is time-barred by a statute of limitations is an affirmative defense[.]"  *United States v. Brody*, 705 F.3d 1277, 1284 (10th Cir. 2013).  That is,

> a statute-of-limitations defense becomes part of a case only if the defendant puts the defense at issue.  When a defendant presses a limitations defense, the government then bears the burden of establishing compliance with the statute of limitations by presenting evidence that the crime was committed within the limitations period or by establishing an exception to the limitations period.

*Musacchio v. United States*, 577 U.S. 237, 247 (2016).

As discussed by the Court, forced labor in violation of § 1589, and conspiracy to commit forced labor in violation of §§ 371 and 1589, are continuing offenses, meaning "the statute of limitations does not accrue until the conduct has run its course."  (Doc. 206, p. 9) (citing *United States v. Dunne*, 324 F.3d 1158, 1164 (10th Cir. 2003)).  The government's position is that all charges within the Indictment—charges of forced labor and conspiracy to commit forced labor—

are continuing offenses and the Indictment was timely filed within the applicable ten-year limitations period. (Doc. 185). The government's position also is that an exception to the 10-year statute of limitations applies to all counts except Count 5 under 18 U.S.C. § 3283, which provides that "[n]o statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse, or kidnapping, of a child under the age of 18 years shall preclude such prosecution during the life of the child, or for ten years after the offense, whichever is longer." 18 U.S.C. § 3283. Under this exception, the statute of limitations would not be a defense for indicted charges "involving the sexual or physical abuse, or kidnapping" of a child as the child victims in this case all are still living. *Id.* The relevant question to the defense, therefore, is whether the indicted charges involved "the sexual or physical abuse, or kidnapping, of a child under the age of 18 years." *Id.* To answer that question and rebut the statute-of-limitations defense pressed by defendants, the government must have the opportunity to present evidence of the "sexual or physical abuse, or kidnapping" of the minor victims within UNOI. Indeed, the Court expressly stated that, in relation to a statute-of-limitations defense, "[t]he parties may submit evidence in support of these respective burdens at trial." (Doc. 206, p. 11).

**B.** **Evidence of Defendant Hadley's Physical Violence is Admissible as Direct and Intrinsic Evidence of Forced Labor, and Is Relevant to Defendants' Statute-of-Limitations Defense (Docs. 250, 264)**

Defendant Hadley seeks to exclude evidence that he instituted physical punishments against UNOI members for non-compliance with UNOI rules and that he otherwise physically abused others in the presence of members and victims. (Doc. 250). Defendant Majeed joined the motion. (Doc. 264). In his motion, defendant Hadley repeatedly, and incorrectly, characterizes such conduct as "prior bad acts." (Doc. 250). As stated in great detail in the government's motion in limine (Doc. 233), such conduct is direct and intrinsic evidence of defendant Hadley's

participation in creating a "climate of fear" that the defendants collectively leveraged against the victims over the course of a decade to compel them provide labor or services in UNOI businesses. (Doc. 233, p. 1-33).  Furthermore, such evidence is relevant to the statute-of-limitations defense that defendants have pressed.  Accordingly, the Court should deny defendant Hadley's motion.

### 1.  Evidence of Defendant Hadley's Physical Violence is Admissible as Direct and Intrinsic Evidence

Defendant Hadley incorrectly asserts that to be admissible at trial, evidence of his beatings and punishments must be particularly related to the performance or nonperformance of labor. (Doc. 250).  The government need not establish a causal link between specific acts of labor and particular coercive actions taken by the defendants.  Rather, courts have held that the relevant analysis is whether the totality of the defendants' conduct created a climate of fear that compelled the victim's labor or services.  *See United States v. Harris*, 701 F.2d 1095, 1100 (4th Cir. 1983) (upholding defendant's conviction under § 1584 based on the "climate of fear" the defendant used to compel farm work); *United States v. Booker*, 655 F.2d 562, 566 (4th Cir. 1981) (upholding defendants' conviction under § 1584 and finding that the record "readily establishes the climate of fear pervading" the defendant's agricultural labor camp); *see also United States v. Farrell*, 563 F.3d 364, 373 (8th Cir. 2009) (considering the entirety of the defendant's conduct, including poor working and living conditions, threats of deportation, imposition of debt bondage, and isolation as evidence of whether the defendant's collective conduct compelled the victims' labor); *United States v. Udeozor*, 515 F.3d 260, 265-66 (4th Cir. 2008) (finding that the sexual abuse of a victim by a co-conspirator, when "used to make the victim believe she had no choice but to comply with the [defendant's] demands," was relevant in determining whether a witness was coerced into involuntary servitude); *United States v. Alzanki*, 54 F.3d 994, 1004-05 (1st Cir. 1995) (finding that

depriving the victim of food and medical care, while simultaneously threatening violence or deportation, contributed to the climate of fear that compelled victim into involuntary servitude).

Similarly, in the sex trafficking context under 18 U.S.C. § 1591—which includes language very similar to that of § 1589 relating to coercion and serious harm—courts have routinely found that the government does not have to show a link between a defendant's specific acts of force, fraud, or coercion and a victim's specific acts of commercial sex.[1] *See United States v. McIntyre*, 612 Fed. Appx. 77, 80 (3d Cir. 2015) ("Section 1591(a) does not require the direct cause-and-effect connection" between an act of force, fraud, or coercion and an act of commercial sex "that [the defendant] posits."); *United States v. Alvarez*, 601 Fed. Appx. 16, 17-18 (2d Cir. 2015) (finding that § 1591 does not require "but for" causation); *United States v. Campbell*, 6 F.4th 764, 771 (8th Cir. 2014) (holding that specific acts of violence need not be linked to specific acts of prostitution and finding that "the district court did not abuse its discretion in finding that [the defendant's] additional assaultive behavior [not directly linked to specific commercial sex acts] during this same time period could be viewed as a 'pattern' intended to make [the victim] believe that failure to continue with prostitution—by simply refusing, reporting it to the police, or leaving him—would result in serious harm"); *United States v. Bell*, 761 F.3d 900, 908 (8th Cir. 2014) (for sex trafficking victim who "testified to several incidents where [the defendant] physically assaulted her when she allegedly disobeyed or disrespected him," "[t]he physical harm was enough to cause her to perform sex acts against her will").

---

[1] By way of the TVPA in 2000, Congress created several new federal criminal offenses intended to more comprehensively and effectively combat human trafficking. Those offenses included both "forced labor" and "sex trafficking of children or by force, fraud or coercion." *See Roe v. Howard*, 917 F.3d 229, 236 (4th Cir. 2019); TVPA, § 112(a)(2), 114 Stat. at 1486-88. Those provisions are respectively codified at 18 U.S.C. §§ 1589 and 1591, all within chapter 77 of Title 18. Because each offense includes coercion as an element, case law interpreting one offense is instructive of interpreting the other.

Consider the following hypothetical: an adult camp counselor routinely administers physical beatings against a child camper for a number of reasons seemingly unrelated to the camper's performance of labor.  The counselor physically beats the camper for dressing inappropriately, sleeping in too late, and violating various camp rules regarding diet and exercise. The counselor also instructs the camper to work 12 hours every day selling lemonade and baked goods to locals in town.  The camper obeys, because the camper fears that refusal to do so would be met with physical violence—violence that the camper has experienced firsthand.  Even though the counselor did not necessarily condition his beatings on the camper's willingness to sell lemonade and baked goods, the counselor nonetheless engaged in a pattern of violence and created a climate of fear that was sufficient to compel the camper to perform the labor.  In this hypothetical, the counselor's conduct is not any less coercive simply because his violent conduct was not explicitly linked to the camper's labor.  In the case at hand, all of defendant Hadley's conduct— including his physical punishments and beatings—are direct evidence of the second element of forced labor, or the creation of a "climate of fear" that the defendants collectively used to compel the victims' labor.  Whether defendant Hadley was acting in his role as the school's administrator, or whether he conditioned his abusive and violent conduct on the provision of labor or services, is immaterial to the analysis.  Instead, the operative question for the jury is whether defendant Hadley engaged in a pattern of violence intended to make the victims believe that failure to perform labor or services would result in serious harm.  Accordingly, evidence of defendant Hadley's physical abuse of others is relevant direct and intrinsic evidence to the charges of forced labor conspiracy and forced labor, and the Court should deny defendant Hadley's motion.

### 2. Evidence of Defendant Hadley's Physical Violence is Relevant to Rebut Defendants' Statute-of-Limitations Defense

As discussed in detail above in Part II.A.2, defendants all have asserted a statute-of-limitations defense in this case. The government's position is that the charges all were appropriately charged within the applicable 10-year statute of limitations, but also that an exception to the 10-year statute of limitations applies to all counts except Count 5 under 18 U.S.C. § 3283. To rebut the defendants' statute-of-limitations defense, the government must have the opportunity to present evidence of the "sexual or physical abuse, or kidnapping," of the minor victims within UNOI. (Doc. 206, p. 11). Accordingly, defendant Hadley's physical abuse of the victims is relevant to the statute-of-limitations defense and the government is entitled to present such evidence.

### C. Any Acts of Forced Labor Prior to October 20, 2011, Are Covered by the Indictment, and Related Evidence is Relevant and Admissible Direct Evidence (Docs. 247, 250)

Defendant Majeed (Doc. 247), joined by defendant Hadley (Doc. 250), moved to preclude acts of forced labor that occurred before October 20, 2011. Specifically, defendant Majeed's motion is a single-page document requesting that the Court preclude the government from presenting any evidence that relates to:

1. Any acts alleged as forced labor occurring prior to October 20, 2011, if said acts related to individuals in the United Nation of Islam who were at least 18 years of age prior to October 21, 2011. (18 U.S.C. [§] 3298)

2. Any acts alleged as forced labor occurring prior to October 20, 2011, if said acts related to individuals under the age of 18 . . . unless said minor child suffered from sexual or physical abuse including but not limited to lacerations, fractured bones, burns, internal injuries, severe bruising and serious bodily harm. (18 U.S.C. [§] 3509(a)(4)

(Doc. 247). Defendant Majeed provides no argument or case citations in support of these requests. Based on the statutory citations, the government infers that defendant Majeed is attempting to

circumvent the Court's ruling rejecting defendants' arguments that the charges in the Indictment are time-barred through this motion in limine.  That is, defendant Majeed is essentially once again asking the Court to dismiss all charges.  Specifically, the government interprets defendant Majeed's first argument to be that any forced labor where the victims were adults that occurred before October 20, 2011—10 years prior to the Indictment—is outside the 10-year statute of limitations set forth in 18 U.S.C. § 3298, and the government should be precluded from presenting evidence on those charges at trial.  Similarly, the government interprets defendant Majeed's second argument to be that any forced labor where the victims were minors that occurred before October 20, 2011, but where the victims were not subject to sexual or physical abuse or kidnapping, should be excluded as the extended statute of limitations under 18 U.S.C. § 3283 would not apply to such charges.  Defendant Majeed's arguments are without merit and previously were addressed by the Court.  (Doc. 206).  Accordingly, the Court should deny defendant Majeed's motion.

As noted above in Part II.A.2, when a defendant asserts a statute-of-limitations defense, the government "bears the burden of establishing compliance with the statute of limitations by presenting evidence that the crime was committed within the limitations period or by establishing an exception to the limitations period." *Musacchio*, 577 U.S. at 247.  In its omnibus order denying defendants' motions to dismiss on statute-of-limitations grounds, the Court explained that:

> [t]he general rule is that statutes of limitation "begin to run when the crime is complete." *Toussie v. United States*, 397 U.S. 112, 115 (1970) (quoting *Pendergast v. United States*, 317 U.S. 412, 418 (1943)).  And "[a] crime is complete as soon as every element in the crime occurs." *United States v. Reitmeyer*, 356 F.3d 1313, 1317 (10th Cir. 2004).  But if the offense is a continuing one, the statute of limitations does not accrue until the conduct has run its course. *United States v. Dunne*, 324 F.3d 1158, 1164 (10th Cir. 2003) (quoting *United States v. Rivera-Ventura*, 72 F.3d 277, 281 (2d Cir. 1995)).

(Doc. 206, p. 8-9).

Through detailed analysis, the Court further explained that the conspiracy charged in Count 1 is a continuing offense, meaning that for the entire conspiracy to fall within the applicable statute of limitations, the factfinder need only find that "the last overt act in furtherance of the conspiracy was committed within the limitations period." (Doc. 206, p.9) (citing *United States v. Jaynes*, 75 F.3d 1493, 1505 (10th Cir. 1996)). If, as multiple defendants have suggested, a defendant "could establish withdrawal outside the limitations period, the conspiracy charge would be untimely." (Doc. 206, p. 10) (citing *Smith v. United States*, 568 U.S. 106, 112 (2013)). As the Court stated, once a statute-of-limitations defense is raised, the government has the burden of proving that the conspiracy (and other offenses) fell within the time period, but the "'burden of establishing . . . withdrawal [from the conspiracy] rests upon the defendant.' *Smith v. United States*, 568 U.S. 106, 113 (2013). The parties may submit evidence in support of these respective burdens at trial[.]" (Doc. 206, p. 11).

The Court went on to analyze the substantive forced labor charges in the Indictment—Counts 2 through 8. After a rigorous analysis, the Court found that:

> [t]he focus of the [forced labor] offense is on obtaining the labor [or] services of the victim, through means that are not discrete in nature. As alleged in the Indictment, even if certain acts by individual defendants were discrete, the criminal conduct continued because these were acts in a series or scheme that allowed them to obtain the labor and services of each victim over a lengthy period of time, either directly or under an aiding-and-abetting theory. . . . As alleged in the Indictment, this scheme relied on a culture of fear created over time by Defendants, and on a national and local scheme that coordinated policy and disciplinary decisions. Therefore, the court finds that Congress intended § 1589 to be a continuing offense, and that the statute of limitations began to run on Counts 2 through 8 when the conduct ran its course.

(Doc. 206, p. 14). In other words, as continuing offenses, the statute of limitations for Counts 2 through 8 only began to run on "the last day on which the offenses were committed." *United States v. Jaynes*, 75 F.3d 1493, 1505 (10th Cir. 1996); (Doc. 206). Because defendants have asserted the

statute of limitations defense, the burden is on the government at trial to establish the timing of the offense to the jury beyond a reasonable doubt.  *See United States v. Piette*, 45 F.4th 1142, 1163 (10th Cir. 2022); (Doc. 206, p.14).

Because both conspiracy and forced labor as charged in the Indictment are continuing offenses, all instances of and evidence relating to forced labor committed by the defendants and other coconspirators during the entirety of the indictment period—from October 28, 2000, continuing through November 30, 2012—are covered by the charges in the Indictment and are direct evidence of the charges.  (Doc. 206, p. 9-14); *United States v. Tavarez Levario*, 788 F.3d 433, 436-37 (5th Cir. 2015) ("The hallmark of the continuing offense is that it perdures beyond the initial illegal act, and that each day brings a renewed threat of the evil Congress sought to prevent even after the elements necessary to establish the crime have occurred") (quoting *Toussie*, 397 U.S. at 122).  In the statute-of-limitations context, the age of the victims and whether the victims suffered sexual or physical abuse or kidnapping as part of the offense is relevant only to the government's burden to show that the statute-of-limitations exception found in § 3283 applies to Counts 1 to 4 and 6 to 8 (should the government fail to meet its burden on the ten-year statute of limitations under § 3298).  (Doc. 206, p. 9-14).  The Court already has ruled on defendants' motions to dismiss the charges on statute-of-limitations grounds and should reject defendant Majeed's second attempt to dismiss these charges on the same grounds.

> **D.  Evidence of Events Occurring Before October 28, 2000, Is Relevant to Charges in the Indictment (Docs. 251, 264)**

In his motion, defendant Jenkins argues that the Court should preclude the government from introducing evidence relating to any events that occurred before the enactment of the TVPA and § 1589 on October 28, 2000, to avoid the danger that the jury will convict defendants based solely on pre-enactment conduct.  (Doc. 251).  Defendant Majeed joined defendant Jenkins'

motion.  (Doc. 264).  Because such conduct may be relevant to the crimes charged, and because the parties and the Court will craft specific jury instructions to guard against any danger of a conviction based entirely on pre-enactment conduct, the Court should deny defendant Jenkins' motion.

The application of a criminal statute is not considered retroactive when the crime charged is a continuing course of conduct, such as conspiracy, that continued past the date of enactment, even if the course of conduct began before the enactment of that statute.  *See United States v. Monaco,* 194 F.3d 381, 386 (2d Cir. 1999) ("It is well-settled that when a statute is concerned with a continuing offense, the Ex Post Facto Clause is not violated by application of a statute to an enterprise that began prior to, but continued after, the effective date of the statute." (citation and quotation marks omitted)), *cert. denied,* 529 U.S. 1077 (2000).  "Where a 'continuing offense' straddles the old and new law . . . applying the new is recognized as constitutionally sound." *United States v. Munoz-Franco*, 487 F.3d 25, 55 (1st Cir. 2007) (quoting *United States v. Regan*, 989 F.2d 44, 48 (1st Cir. 1993)).  In other words, "[a] conviction for a continuing offense straddling enactment of a statute will not run afoul of the Ex Post Facto Clause unless it was possible for the jury, following the court's instructions, to convict 'exclusively' on pre-enactment conduct."  *Id*. (quoting *United States v. Monaco*, 194 F.3d 381, 386 (2d Cir. 1999)).  "[T]he question of whether the violation extended beyond the effective date of [the statute is] one that ha[s] to be resolved by the jury."  *Id*. (quoting *United States v. Tykarsky*, 446 F.3d 458, 480 (3d Cir. 2006)).  It would, however, violate a defendant's due process rights to convict him solely on conduct that ended prior to the enactment of the applicable criminal statute.  *See United States v. Marcus,* 560 U.S. 258, 264 (2010).  The Supreme Court has observed that proper jury instructions as to the timing of the

offense and date of enactment would "minimize, if not eliminate," the risk of a due process violation. *Id.*

The Second Circuit has considered this particular issue in the forced labor context. In *United States v. Marcus*, the defendant was charged with committing forced labor in violation of 18 U.S.C. § 1589. 628 F.3d 36, 40 (2d Cir. 2010). There, the defendant's coercive scheme began at least one year before the enactment of the forced labor statute and continued for approximately three years after the statute was enacted in October 2000. *Id*. at 39-40. At trial, the government presented evidence of the defendant's entire coercive scheme, including evidence of conduct that occurred prior to the enactment of the statute. *Id.* at 40. Such evidence was properly admitted at trial to prove the defendant's ongoing coercive scheme to compel the victim's labor or services. *Id.* However, because the trial court failed to give a limiting instruction regarding pre-enactment conduct, the Second Circuit conducted a plain error analysis. *Id*. at 40-44. The court then concluded that the government had presented substantial evidence of the defendant's post-enactment conduct and there was nothing about the evidence of pre-enactment conduct that led the court to believe it was reasonably probable that the jury would have acquitted the defendant but for the pre-enactment conduct. *Id*. at 43.

The Tenth Circuit has adopted the reasoning from *Marcus* in similar situations. In *United States v. Thornburgh*,[2] the defendant was charged with conspiracy to commit mail and wire fraud and conspiracy to commit money laundering. 645 F.3d 1197, 1203 (10th Cir. 2011). At trial, the government introduced evidence that the conspiracy ran from the late 1990s until 2005. *Id*. at 1202. However, one of the statutes for which the defendant was charged and convicted did not go into effect until July 30, 2002, and the jury was not instructed about the date of enactment. *Id*. at

---

[2] The co-defendant filed a separate appeal arguing the same issue, and the Tenth Circuit came to the same conclusion. *See United States v. Fishman*, 645 F.3d 1175, 1196 (10th Cir. 2011).

1210. The defendant then challenged his conviction arguing that it was violation of the Ex Post Facto clause to convict him based on conduct that occurred before the statute went into effect. *Id*. Based on the ruling in *Marcus*, the court found that the issue is not properly considered as a violation of the Ex Post Facto Clause but rather as a violation of due process. *Id*. at 1211. Because a jury instruction was not given about the date of enactment of the statute, the court needed to do further analysis regarding the violation of due process. *Id*. The court found that, "while it may have been an error for the district court to have failed to specifically instruct the jury [that the statue] was not effective until part way through the conspiracy, that error did not affect [the defendant's] substantial rights . . . [or] the fairness of the proceedings" because there was substantial evidence that the conspiracy continued long after the statute went into effect. *Id*. at 1212. Therefore, there was no due process violation. *Id*.

Here, the defendants are charged with conspiracy to commit forced labor in violation of 18 U.S.C. §§ 371 and 1589 and forced labor in violation of 18 U.S.C. § 1589. This Court previously ruled that all charges in the Indictment—conspiracy and forced labor—are continuing offenses. (Doc. 206, p.14). Based on the foregoing, and because the conspiracy and forced labor charges relate to continuing courses of conduct that started before and continued past the statute's enactment, evidence of pre-enactment conduct is admissible at trial and does not violate the Ex Post Facto Clause. Further, the Court and parties can preserve the defendants' due process rights by crafting and providing the jury an instruction indicating that the jury may not find the defendants guilty based solely on pre-enactment conduct.

It is the government's position that pre-enactment conduct by defendants and others is relevant and admissible direct and intrinsic evidence of the climate of fear and coercive scheme defendants utilized to compel the victims' labor. Alternatively, the government believes this

18

evidence is admissible under Rule 404(b).  Rather than restate the lengthy analysis on the admissibility of such evidence that the government previously set forth in its motion in limine to admit evidence as direct and intrinsic evidence, or alternatively under Rule 404(b), the government refers the Court to that motion.  (Doc. 233).  Accordingly, because pre-enactment conduct is relevant and admissible, the government requests that the Court deny defendant Jenkins' motion.

> **E.    Evidence of Force, Threats of Force, and Physical Restraint Prior to December 23, 2008, Is Relevant Direct and Intrinsic Evidence (Docs. 251, 264)**

Defendant Jenkins, joined by defendant Majeed (Doc. 264), seeks to exclude evidence of "force, threats of force, physical restraint, and threats of physical restraint" not "ris[ing] to the level of" serious harm and other means of coercion explicitly outlined in the 2000 version of the federal forced labor statute, claiming that failing to do so could result in him being "convicted on the basis of pre-enactment behavior."  (Doc. 251).  Because the legislative history and court interpretation of the pre-2008 statute make clear that the 2000 version of the statute encompasses such coercive means, the Court should deny this motion.

The Indictment charges defendants with engaging in two continuing offenses between approximately October 28, 2000, and November 30, 2012:  forced labor conspiracy and forced labor.  (Doc. 1, Doc. 206).  The Indictment uses the language of § 1589 that was in effect between October 28, 2000, and December 23, 2008, when the statute was amended.  Specifically, mirroring the language of the 2000 version of § 1589, the Indictment provides, in part, that defendants:

> did knowingly provide and obtain the labor and services of [each victim] . . . by threats of serious harm to, and physical restraint against, that person and another person; by means of any scheme, plan, and pattern intended to cause the person to believe that, if the person did not perform such labor and services, that person and another person would suffer serious harm and physical restraint; and by means of the abuse and threatened abuse of law and the legal process.

(Doc. 1).

In 2008, § 1589 was amended, in relevant part, to read as follows, with language added by the 2008 amendments in italics:

(a) Whoever knowingly provides or obtains the labor or services of a person *by any one of, or by any combination of, the following means—*

1. by *means of force, threats of force, physical restraint, or* threats of physical restraint against [*to*] that person or another person;

2. *by means of serious harm or* threats of serious harm to that person or another person; or

3. by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint, shall be punished as provided under subsection (d). . . .

(b) *In this section:* . . .

> *2. The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.*

18 U.S.C. § 1589 (2008). Although the original statute did not include the language of "force, threats of force, physical restraint" or an explicit definition of "serious harm," the congressional record makes clear that the broad language of the 2000 version of the statute encompassed such prohibited means as well as the definition of "serious harm," and courts have so interpreted the statute.

As discussed above in Part II.A.1, and in the government's motion in limine (Doc. 233), Congress enacted § 1589 in 2000 as part of the TVPA, which was, in part, a response to the Supreme Court's narrow reading of the involuntary servitude and related statutes in *United States v. Kozminski*, 487 U.S. 932 (1988). In enacting the TVPA, Congress stated its intent to cover the conduct of traffickers who "use more subtle means designed to cause their victims to believe that

serious harm will result" if they leave or refuse to perform labor *in addition to* traffickers who "kept [victims] in service through overt beatings". H.R. Conf. Rep. No. 106-939 (2000), 2000 WL 1479163 at *101 (Oct. 5, 2000). Congress explicitly recognized that "[v]ictims are often forced through physical violence to engage in sex acts or perform slavery-like labor. Such force includes rape and other forms of sexual abuse, torture, starvation, imprisonment, threats, psychological abuse, and coercion." 22 U.S.C. § 7101(b) (congressional findings and purposes relating to enactment of § 1589). Rather than changing the statute's reach, Congress's 2008 amendment of § 1589 further demonstrates its original intent to criminalize obtaining labor through either physical or non-physical means of coercion. 18 U.S.C. § 1589 (2008).

Courts also have interpreted the 2000 statute's coercive means to be the same as that of the post-amendment 2008 statute—the amendments simply codified rather than changed the prohibited means. The jury instructions in *United States v. Kaufman*, 5:04-cr-40141, Doc. 305 (D. Kan. Nov. 3, 2005), are instructive on this point. In that case, the government charged two defendants with forced labor under the 2000 version of § 1589. The Court instructed the jury that § 1589 "makes it a crime to obtain labor or services from another person *by the use of, or threatened use of, force* or other coercive means." *Id.* (emphasis added). It also gave the jury parameters on the meaning of the phrase "serious harm," explicitly citing physical harm and threats of physical violence as potential means of establishing the second element of a forced labor charge:

> The term "serious harm" includes *both physical* and non-physical types of harm. *A threat of serious harm, therefore, may, but need not, involve any threat of physical violence*. It includes threats of any illegitimate or improper consequences, whether physical or nonphysical, that are sufficient, under all the surrounding circumstances, to compel or coerce a reasonable person in the same situation as the alleged victims named in the indictment to provide, or to continue providing, labor or services.

*Id.* (emphasis added).  The jury ultimately convicted the *Kaufman* defendants pursuant to these instructions, and these convictions were upheld by the Tenth Circuit.  *See United States v. Kaufman*, 5:04-cr-40141 (D. Kan. Nov. 3, 2005), *affirmed*, 546 F.3d 1242 (10th Cir. 2008). Significantly, when Congress enacted the 2008 amendments to the TVPA defining "serious harm," it drew from jury instructions interpreting the 2000-era statute, which align with the *Kaufman* instructions.  *Compare United States v. Bradley*, 390 F.3d 145, 150 (1st Cir. 2004), *vacated on Booker grounds*, 543 U.S. 220 (2005), *with Kaufman*, 5:04-cr-40141, Doc. 305, *and* 18 U.S.C. § 1589 (2008).

As the government discussed at length in its Rule 404(b) notice and motion in limine, evidence of force and threats of force is directly relevant to showing that defendants created a climate of fear which they used to compel the victims' labor in violation of § 1589, as initially enacted in the year 2000.  (Doc. 233).  Multiple courts have upheld forced labor convictions— under the 2000 version and later versions of § 1589—pursuant to a "climate of fear" theory of coercion involving recurring acts of violence or threats of violence.  *See, e.g.*, *United States v. Marcus*, 487 F. Supp. 2d 289, 310 (E.D.N.Y. 2007), *rev'd in part, vacated in part, and remanded on other grounds*, 628 F.3d 36 (2d Cir. 2010) (affirming forced labor conviction and finding that a jury could reasonably find that defendant obtained labor "through a persistent pattern of punishing [the victim] when he was dissatisfied with her work," which created "a climate of fear that was sufficient to cause her to perform labor or services against her will"); *see also* Doc. 233, Part II.A (collecting cases involving "climate of fear" theory).

Accordingly, it is clear from both the case law and legislative history that a violation of the original § 1589 may be established through evidence of force, threats of force, or physical restraint that occurred prior to 2008.  Therefore, the Court should deny defendant Jenkins's motion.

### F.    Drug Dealing and Drug Use within UNOI (Docs. 251, 264)

In his motion in limine, defendant Jenkins asks the Court to categorically preclude any evidence related to his prior drug use and dealing.  (Doc. 251).  Defendant Majeed joined this motion.  (Doc. 264).  Although the government does not necessarily intend to introduce evidence of Jenkins's drug use or dealing in its case in chief, the government wants to clarify that such evidence could become relevant and admissible if defendant Jenkins or another defendant were to open the door.  Such evidence could become relevant and admissible in a number of ways.

For example, such evidence could become relevant to establish that defendant Jenkins—or another defendant—was not a true believer of the tenets of UNOI.  If defendant Jenkins were to assert a defense that in any way portrayed him as a devout follower of UNOI and its beliefs, then evidence of defendant Jenkins's drug use and dealing would become relevant to rebutting that defense, as drug use and dealing were strictly prohibited in UNOI.

Additionally, defendant Jenkins has already invoked a statute-of-limitations defense, and the government anticipates that he will continue to assert the defense at trial and attempt to prove that he withdrew from the conspiracy more than ten years before he was indicted in this case.  In that circumstance, evidence of defendant Jenkins's arrest for drug dealing may become relevant to rebutting his defense of withdrawal.  Specifically, the government anticipates that a witness will testify that she visited defendant Jenkins in jail following his arrest, at which time defendant Jenkins told the witness that he wanted to come back to UNOI.  Such evidence directly contradicts the notion that defendant Jenkins withdrew from the conspiracy.  If Jenkins asserts such a defense, the government reserves the right to rebut his defense with any evidence to the contrary, including the above-described encounter following defendant Jenkins's drug arrest.

Lastly, the government cannot anticipate every issue that will arise during this trial.  In the event that defendant Jenkins or any other defendant raises an issue that makes defendant Jenkins's prior drug use and dealing relevant or otherwise opens the door, the government would be entitled to present such evidence at trial, in accordance with the Rules of Evidence, and reserves the right to do so.

### G.      References to UNOI as a Cult (Docs. 238, 250, 252)

In their motions, defendants Staton (Doc. 238) and Peach (Doc. 252), joined by defendant Hadley (Doc. 250), seek to bar the government from using the word "cult" in voir dire and at trial. The government has no intention of referring to the United Nation of Islam as a "cult" or otherwise "elicit[ing] testimony from a witness such that the term 'cult' would be used." *See United States v. Helbrans*, 2021 WL 4778525, at *17 (S.D.N.Y. Oct. 12, 2021) (holding government must uphold its promise to refrain from referring to religious group as a "cult" or "intentionally elicit[ing] testimony such that the term 'cult' would be used").

That said, the unexpected use of this term by a government witness would not be unduly prejudicial and certainly would not be grounds for a mistrial in the context of this case.  As noted in the government's response to defense motion for a bill of particulars (Doc. 185), the purportedly faith-based rules enforced by Royall Jenkins and the defendants created a climate of fear that resulted in the victims' compelled labor at UNOI businesses.  Indeed, Royall Jenkins and the defendants threatened death, other serious maladies, and burning in "eternal hellfire" if members were to try to leave UNOI or fail to perform their "duty" at UNOI businesses, saying it was "Allah's" (*i.e.*, Jenkins's) will.  Such evidence is directly relevant and intrinsic to the charged conduct.  *See United States v. Murra*, 2016 U.S. Dist. LEXIS 204284 at *12-18 (N.D. Tex. July 18, 2016) (admitting, in a case involving § 1589 charges, evidence of defendant's religious

teachings and disciplinary regime as relevant because they were "probative of the alleged scheme, plan, or pattern" and served to "justify, rationalize, and promote [defendant's] alleged crimes"); *United States v. Beasley*, 72 F.3d 1518, 1527-28 (11th Cir. 1996) (affirming admission, using Rule 403 balancing, of defendant's religious teachings, which he used "to exert[] influence and control over the members," and finding the religious teachings to be relevant as they "were used to justify, rationalize, and promote crime").

With this background, a spontaneous utterance by a government witness describing their experience with UNOI as cult-like would not be unduly prejudicial. Evidence is unduly prejudicial if it prejudices a defendant's case on the basis of "some concededly relevant evidence to lure the factfinder into declaring guilt *on a ground different from proof specific to the offense charged*." *Old Chief v. United States,* 519 U.S. 172, 180 (1997) (emphasis added). But unfair prejudice does not mean that which "results from the legitimate probative force of the evidence" and is directly related to a central question in the case. *See United States v. Wallace*, 124 Fed. App'x 165, 167 (4th Cir. 2005) (citation omitted). Indeed, the term "cult" is no more inflammatory than evidence of the charged conduct here, which involves the use of control and threats via religious teachings and related disciplinary regimes. *See United States v. Merritt*, 961 F.3d 1105, 1115 (10th Cir. 2020) (admitting Rule 404(b) evidence over Rule 403 objection, noting that evidence is only "unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant *wholly apart* from its judgment as to his guilt or innocence of the crime charged" (citation omitted, emphasis in original)). This is especially so given that some of the defendants and their counsel have already referred to UNOI as a cult during pre-trial proceedings and may do so at trial. *See, e.g.,* June 26, 2023, Mot. Hr'g Trans. 10:10-12; 16:10-13; 65:4-5 ("[T]his was a

religion to some of these people; a cult, our clients now call it or many of our clients do.").
Accordingly, the Court should deny defendants' request to prohibit references to UNOI as a cult.

### H. The Government's Production of Evidence Is Not Untimely (Docs. 238, 250)

Defendant Staton (Doc. 238), joined by defendant Hadley (Doc. 250), requests that the
Court exclude untimely discovery that allegedly was produced in violation of the Court's pretrial
discovery order on November 22, 2021 (Doc. 63). The defendants take issue with two rounds of
discovery productions, one that included 209 files, and another that included interview reports;
and they claim that these productions violate the Court's 30-day discovery deadline.

The defendants misstate the Court's pretrial discovery order regarding its 30-day deadline
and 72-hour witness statement requirement, and they mistakenly argue that the government is in
violation. There are two 30-day deadlines in the Court's Order: one pertains to discovery that must
be provided 30-days after arraignment, and the other, that instills new rules for witness interviews
when they are conducted within 30 days of trial. As stated in the Court's Order, specifically,
Section 9: Government's Discovery Deadlines:

Discovery must commence on or before the date of arraignment of the defendant(s).
Discovery must be completed within 30 days after arraignment, to the extent possible. Any such
discovery not provided by 30 days after arraignment must be promptly provided upon availability.
This 30-day deadline does not apply to discovery that is:

    1. not yet available;
    2. not yet memorialized in writing;
    3. ESI that is not yet processed and formatted for delivery and access; or
    4. Jencks Act materials.

Except in cases in which the government has invoked the Jencks Act, if any witness
provides a statement within 30 days of trial, the government must promptly provide the defense

with a summary of the witness's statements that are different in any respect than prior oral or written statements by the witness, or that provide information or detail not provided by the witness in any prior statements discovered by the defense. The government must provide this summary to the defense by email within 72 hours of the witness's statements, and in no event any later than 4 hours before the witness testifies. The statements or memoranda of interviews must also be memorialized in writing and promptly provided to the defense.

The government must file its notice of the Fed. R. Evid. 404(b) evidence it intends to use at trial, on or before 21 days before trial. (Doc. 63).

This case was arraigned on November 22, 2021. The trial is set for March 4, 2024. The government began producing timely discovery in this case, with its first production provided by November 30, 2021, well within the Court's initial 30-day after arraignment rule. Since then, the government has continued to provide discovery promptly upon availability. The Court's 30-day discovery deadline does not apply to that which is 1) not yet available; 2) not yet memorialized in writing; 3) ESI that is not yet processed and formatted for delivery and access; or 4) Jencks Act materials. (Doc. 63). Using the defendants' logic, any discovery given after 30 days would be untimely. However, that is not what the defendants are arguing; they only take issue with production 9 and 10—only one of which (production 10) includes witness interviews. Because we are not within 30 days of trial, production 10 is not untimely.

None of the discovery provided by the government is untimely, based on the Court's order and both 30-day rules. Production 9 included emails and materials obtained from witnesses after follow-up interviews conducted in November 2023 in preparation for trial. Following the interviews, the government emailed all counsel on December 5, 2023, to inform them that "one witness we recently met with indicated that she has some emails in her possession that she will be

providing to the government.  We don't have those yet and don't know volume—she mentioned 'hundreds,' but we don't otherwise have any sense of how many.  We wanted to give you advance notice they will be coming, if/when we receive them.  Another witness indicated that she wrote a book about her time in UNOI, but it has yet to be published—we are trying to obtain a copy of that as well."  Following this notice, the government obtained these materials and promptly disclosed them in production 9, on January 9, 2024.  Moreover, on January 12, 2024, the government gave notice of which specific subset of those emails and materials it intends to use at trial by outlining them as exhibits in the Government's Exhibit List.  (Doc. 231).

The emails were delivered via FedEx to the government on December 18, 2023; processed by attorneys by December 26, 2023, and disclosed in full to the defendants in production 9, on January 3, 2024, all in advance of defendants filing their motion calling it untimely.[3]  This production also included the other witness's book, which was similarly obtained and disclosed in a timely manner after it came into the government's possession.  The remainder of the discovery production was primarily comprised of photographs of locations relevant to UNOI, screenshotted from Google Maps and other publicly available websites.

Production 10, primarily comprised of the FBI 302s of the beginning round of trial preparation interviews with the witnesses, was promptly disclosed when the interviews were memorialized in formal written 302s.  The interviews were conducted at the end of November and throughout December and produced in formal written 302s by January 10, 2024.  Until the government is within 30-days of trial, the Court's 72-hour rule does not apply.  Once we are within 30-days of trial, the government will be required to—and will—submit summaries of new information obtained in additional interviews within 72-hours of conducting them, however, at

---

[3] On January 11, 2023, the government provided this same information to defense counsel (timing of receipt, review, and production of these documents over the holidays) after one of the defendant's counsel asked for details.

this time, the government's production was well within the scope of the Court's discovery order. Accordingly, because the government has complied with its discovery obligations, the Court should deny defendant Staton's motion.

**I.      Sequestered Witnesses (Docs. 238, 250, 252)**

Defendant Peach (Doc. 238) requests that the Court sequester witnesses at trial; similarly, defendant Staton (Doc. 252, p.8) requests that the Court "prohibit anyone from disclosing trial testimony to any sequestered witness."  Defendant Hadley (Doc. 250) joined these motions.  The government also intends to invoke the rule for witness sequestration and, consistent with the Court's Guidelines for Civil and Criminal Proceedings, the government will advise its witnesses accordingly.  The government would request that the Court instruct the defense to do the same.

**J.      References to Defendant Jenkins and Royall Jenkins (Docs. 251, 264)**

In his motion, defendant Jenkins, joined by defendant Majeed (Doc. 264), requests that the Court "prohibit the parties from referring or their witnesses referring to Royal Jenkins or any other party with the last name Jenkins by referring to them as Jenkins or Mr. Jenkins." (Doc. 251).  The government does not intend to refer to Royall Jenkins in a manner that would create undue confusion.  If a witness were to refer to Royall Jenkins in a way that created confusion, the government would seek clarification, and defense counsel would be free to do so on cross-examination as well.  The government anticipates Royall Jenkins will be referred to by both the government and its witnesses by his full name or simply "Royall."  However, the government does not believe there should be a hard and fast rule as to how witnesses should refer to individuals and if a reference to any individual is unclear counsel can seek clarification.

### K.    Early Access to Information About the Jury Pool (Docs. 238, 250, 252)

The motions filed by defendant Staton (Doc. 238) and defendant Peach (Doc 252), joined by defendant Hadley (Doc. 250), request that the Court depart from its general practice and provide the parties with juror profiles 30 days before trial.  The government opposes this request. The Court typically provides a list of prospective jurors to the parties a few days prior to trial.  This is sufficient notice for the parties to analyze the names and organize their files prior to voir dire. There is no particular issue or concern in this case that warrants a different approach.  Accordingly, the government respectfully requests that the Court deny these motions.

### L.    Additional Defense Preemptory Challenges (Docs. 238, 250, 252)

The motions filed by defendants Staton (Doc. 238) and Peach (Doc. 252), joined by defendant Hadley (Doc. 250), request that the Court allow the defendants additional preemptory challenges at trial.  The government is not opposed to the Court allowing defendants a reasonable number of additional preemptory challenges if it also allows the government a proportionate increase in preemptory challenges.

Under Rule 24(b)(2) of the Federal Rules of Criminal Procedure, a defendant in a noncapital federal criminal trial is entitled to ten peremptory challenges.  "The court may allow additional peremptory challenges to multiple defendants, and may allow the defendants to exercise those challenges separately or jointly." *Id.*  Conversely, the law is settled that multiple defendants have no right to more peremptory challenges than given to them by Fed. R. Crim. P. 24(b).  *United States v. Espinosa*, 771 F.2d 1382, 1406 (10th Cir. 1985) ("'When several defendants are indicted and tried together, they have a right to no more challenges than a single defendant.'" (quoting *United States v. Stidham*, 459 F.2d 297, 299 (10th Cir. 1972))).  Thus, the Court has no obligation to provide additional challenges, and its decision whether to allow additional peremptory

challenges is committed to its sound discretion.  *United States v. Magana*, 118 F.3d 1173, 1206 (7th Cir. 1997).

Here, the defendants have offered no particularized basis for their request to increase the number of peremptory challenges available to them during trial.  Nonetheless, the government does not object to a reasonable increase in the number of peremptory challenges available to the defendants, which they can exercise collectively or jointly at the Court's discretion.  However, the Court should not increase the number of challenges allocated to the defendants unless it also proportionately increases the number of challenges allocated to the government.  For example, if the Court increases the number of defense peremptory challenges by fifty percent to fifteen, a fifty-percent increase for the government (to nine total peremptory challenges) would be appropriate.

### M.    Advance Notice of Next Day's Witnesses and Exhibits (Docs. 238, 250)

In his motion, defendant Staton, joined by defendant Hadley (Doc. 250), requests that the Court order the parties to provide opposing counsel advance notice of the next day's witnesses and exhibits.  (Doc. 238).  Consistent with the Court's Guidelines for Civil and Criminal Proceedings, the evening before the following day's testimony the government will disclose anticipated witnesses and exhibits that the government will seek to admit during their testimony.   The government requests that defendants follow the same procedure and disclose anticipated witnesses and exhibits the day before.

III.    **CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court deny defendants' motions in limine or otherwise find them moot in accordance with the government's above representations.

Respectfully submitted,

KATE E. BRUBACHER
UNITED STATES ATTORNEY

By: */s/ Ryan J. Huschka*
Ryan J. Huschka
Assistant United States Attorney
United States Attorney's Office for the
District of Kansas
500 State Avenue, Suite 360
Kansas City, KS 66101
Phone:  913-551-6730
Fax:  913-551-6754
Email:  Ryan.Huschka@usdoj.gov
KS Bar No. 23840

KRISTEN CLARKE
ASSISTANT ATTORNEY GENERAL

By: */s/ Kate A. Alexander*
Kate A. Alexander
Trial Attorney
USDOJ Civil Rights Division
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Phone:  202-353-3539
Email:  Kate.Alexander@usdoj.gov
FL Bar No. 27393

By: */s/ Maryam Zhuravitsky*
Maryam Zhuravitsky
Trial Attorney
USDOJ Civil Rights Division
950 Pennsylvania Avenue NW
Washington, D.C. 20530

32

Phone:  202-532-3592
Email:  Maryam.Zhuravitsky@usdoj.gov
MD Bar No. 1312190348


By: */s/ Francisco Zornosa*
Francisco Zornosa
Trial Attorney
USDOJ Civil Rights Division
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Phone:  202-616-4588
Email:  Francisco.zornosa@usdoj.gov
NY Bar No. 5477245

**CERTIFICATE OF SERVICE**

I hereby certify that on January 29, 2024, I caused the foregoing pleading to be filed with the Clerk of the Court, with a true and accurate copy provided to each counsel of record in the case.

<div style="margin-left:50%">

*/s/ Ryan J. Huschka*
Ryan J. Huschka
Assistant United States Attorney
United States Attorney's Office for the
District of Kansas

</div>